[No. B155839. Second Dist., Div. Two. Jan. 28, 2003.]

MATTHEW SCOTT PEDERSON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Michael P. Judge, Public Defender, Terrance Cheung, Maureen Pacheco and John Hamilton Scott, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and Mary E. Sanchez, Deputy Attorneys General; Steve Cooley, District Attorney, Brent Riggs and Fred Klink, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**NOTT, Acting P. J.**—We are called upon to review the constitutionality of Penal Code section 1367.1,[1] pertaining to evaluations of misdemeanor defendants who a trial judge believes may be incompetent to stand trial due to a mental disorder. Section 1367.1, subdivisions (b) and (c), require that (1) trial of a misdemeanor defendant suspected of incompetence be suspended; (2) the defendant be referred for evaluation and treatment under section 4011.6, which incorporates the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.); and (3) criminal proceedings be suspended until treatment is concluded. Section 1367.1 also provides that if treatment under the LPS Act does not restore competence, the misdemeanor defendant is then subject to the same proceedings as is a felony defendant thought to be incompetent to stand trial due to a mental disorder. A felony defendant is not required to undergo evaluation and treatment under LPS prior to a competency determination.

We hold that section 1367.1 deprives misdemeanor defendants of the equal protection of the laws, and that it cannot be construed or reformed to preserve its constitutionality.

---

[1] All further references will be to the Penal Code unless otherwise indicated.

## Summary of Facts and Procedure

Petitioner Matthew Scott Pederson was charged with a misdemeanor violation of Health and Safety Code section 11550, being under the influence of a controlled substance. Pederson pleaded not guilty. The court set a readiness hearing on December 31, 2001, and a jury trial on January 2, 2002. Pederson remained in custody.

At the readiness hearing, Pederson's counsel informed the court that he was unable to proceed with trial. Based on a recent psychiatric evaluation of Pederson, defense counsel declared a doubt concerning Pederson's competence. Defense counsel requested a competency hearing under section 1368. Pederson was, however, referred for evaluation and treatment to the Los Angeles County Department of Mental Health pursuant to section 4011.6 under the provisions of section 1367.1.

On January 14, 2002, in the mental health department of the superior court, Pederson moved for an order allowing him to obtain a competency finding without regard to the evaluation and treatment required by section 1367.1, and a declaration that section 1367.1, subdivisions (b) and (d) are unconstitutional. The court denied Pederson's motions, and returned the case to the criminal trial department. Pederson promptly filed this petition for writ of mandate challenging the denial of his motions. He sought an order commanding an immediate competency evaluation under section 1369, treatment if adjudged incompetent, and trial if adjudged competent.

On January 22, 2002, the jail mental health service informed the court that it had evaluated Pederson under section 4011.6 and had found Pederson to meet LPS criteria, and that it had admitted him to a designated mental health facility, where he was to be treated.

After receiving the report, the criminal court ordered Pederson housed in the intensive mental health unit of the jail, where he was to receive psychiatric treatment, including psychotropic medication. On March 5, 2002, the court dismissed the criminal complaint in the interests of justice. (§ 1385.)

After we summarily denied the petition, the Supreme Court directed this court to hear the petition on its merits.[2]

---

[2]Because of the Supreme Court's order, we do not address Pederson's contention that the petition, arising from a misdemeanor, was properly presented to this court rather than to the appellate division of the superior court. (See Cal. Rules of Court, rule 56(a)(1).)

The People concede that section 1367.1 violates the equal protection and due process clauses, but disagree with Pederson's contention that section 1367.1 also necessarily violates a defendant's right to a speedy trial.[3] The parties also disagree concerning the extent to which section 1367.1 should be invalidated. Pederson maintains that section 1367.1 should be stricken in its entirety as unconstitutional, while the People contend that some provisions of section 1367.1 should be retained.

Although Pederson has been released from custody with no charge pending, we address the merits of Pederson's petition because it presents an issue of important public policy that is likely to recur. (*In re William M.* (1970) 3 Cal.3d 16, 23-25 [89 Cal.Rptr. 33, 473 P.2d 737].)

## DISCUSSION

*Statutory Framework*

A defendant is not competent to stand trial if, as a result of a mental disorder or developmental disability, he or she is unable to understand the nature of the criminal proceeding or to rationally assist counsel in the conduct of a defense. (§ 1367, subd. (a).) Proceedings governing competence to stand trial appear in title 10, chapter 6, section 1367 et seq. of the Penal Code. Section 1367, enacted in 1872, codified the common law rule that an insane man could not be tried, sentenced, or punished for a criminal offense.

Three classes of mentally incompetent defendants are delineated in section 1367: (1) felony defendants incompetent due to a mental disorder; (2) misdemeanor defendants incompetent due to a mental disorder; and (3) felony or misdemeanor defendants incompetent due to a developmental disability, or due to a mental disorder in combination with a developmental disability.

Section 1367 also provides that proceedings for a misdemeanor defendant thought to be incompetent as a result of a mental disorder are governed by sections 1367.1 and 1370.01. (§ 1367, subd. (b).) Section 1367.1, at issue here, governs initial evaluation and treatment of a misdemeanor defendant thought to be incompetent due to a mental disorder, prior to any competency

---

[3]The People are represented in this proceeding by the Los Angeles County District Attorney. A reference to the People or the parties denotes the position of the district attorney. The Attorney General was invited to respond on selected issues. The Attorney General took the position that section 1367.1 could be construed in a manner to preserve its constitutionality.

determination. Section 1370.01 governs proceedings, including placement and treatment, following a hearing in which a misdemeanor defendant has been found to be incompetent due to a mental disorder.

In 1992, sections 1367.1 and 1370.01 were enacted, and sections 1367 and 1370.1 were amended. (§ 1367.1, added by Stats. 1992, ch. 722, § 11, pp. 3354-3355; § 1370.01, added by Stats. 1992, ch. 722, § 12, pp. 3355-3356; § 1367, as amended by Stats. 1992, ch. 722, § 10, p. 3354; § 1370.1, as amended by Stats. 1992, ch. 722, § 13, pp. 3355-3356.) Prior to the enactment of section 1367.1, all criminal defendants who appeared to be incompetent to stand trial due to a mental disorder were subject to section 1368, which specifies precompetency hearing procedures; section 1368.1, which governs proceedings on demurrer or motion pending a competency determination; section 1369, which governs competency hearings; and section 1370, which governs commitment and treatment of defendants found incompetent to stand trial due to a mental disorder. These statutes continue to govern precompetency procedures for felony and developmentally disabled defendants. The enactment of section 1367.1 created new *precompetency determination procedures* pertaining only to mentally disordered *misdemeanor* defendants.

Section 1367.1 provides for evaluation and treatment under section 4011.6 of a misdemeanor defendant thought to be incompetent due to a mental disorder. As is the case with a felony defendant under section 1368, section 1367.1 proceedings are initiated by the court's expression of doubt concerning the defendant's mental competence, and the court's query to and response from counsel concerning counsel's assessment of the defendant. Where, under section 1368, the court's query and counsel's response address the defendant's "mental competence," the court's query and counsel's response under section 1367.1 address whether the defendant is "mentally disordered." Whether the mental disorder may result in incompetence to stand trial is not part of the court's inquiry under section 1367.1, nor of counsel's response. (§ 1367.1, subd. (b).)

Insofar as is relevant, section 1367.1, subdivision (c) provides that when the court makes a referral for evaluation and treatment under section 4011.6, all criminal proceedings are suspended until evaluation and treatment have been concluded, at which time the defendant is returned to court.[4] Subdivision (d) provides that if it appears to the court upon the defendant's return to

---

[4]Section 1367.1 excepts the provisions of section 1368.1 from the blanket suspension of criminal proceedings for a misdemeanor defendant undergoing evaluation and treatment in accordance with section 4011.6. Section 1368.1, a statute applicable to both misdemeanor and

court that he or she is competent, criminal proceedings resume. (§ 1367.1, subd. (d).) If it appears that the defendant may remain incompetent to stand trial despite section 4011.6 evaluation and treatment, the court may order a determination of the defendant's competence to stand trial by a hearing under sections 1368.1 and 1369. (§ 1367.1, subd. (d).)

Prior to the 1992 enactment of section 1370.01, misdemeanor and felony defendants who had been found incompetent to stand trial due to a mental disorder were treated in state hospitals. Section 1370.01 established new procedures for treating mentally disordered misdemeanor defendants by a local mental health program and decreased the time in which treatment to restore competence could be administered.

Section 4011.6, incorporated in part in section 1367.1, applies to all inmates of local detention facilities. It provides for the transfer of an inmate to a designated mental health facility for 72-hour evaluation and treatment under the LPS Act (Welf. & Inst. Code, § 5150), and, upon the inmate's transfer, application of LPS civil commitment provisions and proceedings concurrent with criminal proceedings. Upon transfer, specified LPS provisions for evaluation and treatment under Welfare and Institutions Code, chapter 2 apply: article 1 (Welf. & Inst. Code, § 5150 et seq. [72-hour detention of mentally disordered persons for evaluation and treatment]); article 4 (Welf. & Inst. Code, § 5250 et seq. [14-day certification for intensive treatment]); article 4.5 (Welf. & Inst. Code, § 5260 et seq. [14-day additional intensive treatment of suicidal persons]); article 6 (Welf. & Inst. Code, § 5300 et seq. [180-day postcertification procedures for imminently dangerous persons]); and chapter 3 (Welf. & Inst. Code, § 5350 et seq. [one-year conservatorships for gravely disabled persons]). The mental health facility is required to report to the court concerning the inmate's condition at the end of each period of confinement.

Certain provisions of section 4011.6 are not incorporated by section 1367.1, among them that evaluation and treatment under section 4011.6 does not delay trial or arraignment.[5] Section 1367.1, subdivision (c) expressly suspends all criminal proceedings until evaluation and treatment under section 4011.6 are completed.

---

felony defendants, provides that a misdemeanor defendant may do any of the following: (1) demur to the complaint; (2) move to dismiss the complaint on the ground that there is no reasonable cause to believe a public offense has been committed and that the defendant is guilty of it; or (3) make a motion to suppress under section 1538.5. The court may hear any of these motions capable of fair determination without the personal participation of the defendant. (§ 1368.1, subd. (b).)

[5]Section 4011.6 prohibits tolling of time for arraignment and trial unless the persons in charge of the inmate's treatment facility determine that arraignment or trial would be

*Legislative History of Section 1367.1 and Related Provisions*

Section 1367.1 was enacted in 1992 following legislative approval of Senate Bill No. 485 (added by Stats. 1992, ch. 722, § 11, pp. 3354-3355). The Legislative Counsel's Digest to the chaptered bill did not address it. The Office of Senate Floor Analyses Report of Senate Bill No. 485 discussed the bill's provisions pertaining to incompetent misdemeanants solely in terms of what was to become section 1370.01, governing placement and treatment once a finding of incompetence has been made. The Assembly Ways and Means Committee Republican Analysis of Senate Bill No. 485 characterized the bill's provisions concerning incompetent defendants as "limit[ing] the time the state would pay for admission of Incompetent to Stand Trial (ISTs)" (Sen. Republican Caucus, analysis of Sen. Bill No. 485 (1991-1992 Reg. Sess.) p. 1), and reported that the State Department of Mental Health had advised that provisions concerning persons incompetent to stand trial "[e]liminate[ed] a cost to [the State Department of Mental Health] which reasonably was not the responsibility of the state." (*Id.* at p. 3.) Similarly, an enrolled bill report, authored by the State Department of Mental Health, described Senate Bill No. 485 as transferring the "state's fiscal and programmatic obligation to provide services to IST misdemeanants to the counties thereby reserving the remaining resources for the most needy mental health consumers." (Postenrollment Bill Rep., Sen. Bill No. 485 (1991-1992 Reg. Sess.) ch. 722, p. 18.) Elsewhere in its report, the State Department of Mental Health addressed savings to the state that would be realized by treating misdemeanor defendants found incompetent to stand trial in a local mental health facility rather than in a state hospital.

*Equal Protection*

The parties agree that section 1367.1 deprives misdemeanor defendants of the equal protection of the laws. Our own analysis confirms that the parties are correct.

The constitutional guarantee of equal protection of the laws has been defined to mean that all persons under similar circumstances are given " 'equal protection and security in the enjoyment of personal and civil rights . . . and the prevention and redress of wrongs. . . .' " (*People v. Pearce* (1970) 8 Cal.App.3d 984, 988 [87 Cal.Rptr. 814].) The concept " ' "compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' " (*In re Eric J.* (1979) 25 Cal.3d 522, 531 [159 Cal.Rptr. 317, 601 P.2d 549].)

detrimental to the inmate. Statutory time requirements for arraignment and trial are otherwise unaffected by the inmate's LPS status.

Equal protection does not require absolute equality in classification. (*People v. Shipman* (1965) 62 Cal.2d 226, 232 [42 Cal.Rptr. 1, 397 P.2d 993].) "[S]ome classification is inevitable and constitutionally permissible and there is a very strong presumption of validity in legislative classifications." (*People v. Pearce, supra,* 8 Cal.App.3d at p. 988.) Classification, however, "must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; and classification cannot be arbitrarily made without any substantial basis." (*Southern Railway Co. v. Greene* (1910) 216 U.S. 400, 417 [30 S.Ct. 287, 291, 54 L.Ed. 536].)

■ A prerequisite to a meritorious equal protection claim is a showing that the state has treated two or more similarly situated groups in an unequal manner. (*In re Eric J., supra,* 25 Cal.3d at p. 530.) "The 'similarly situated' prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified." (*People v. Nguyen* (1997) 54 Cal.App.4th 705, 714 [63 Cal.Rptr.2d 173].)

■ The parties agree that misdemeanor and felony defendants suspected of incompetence to stand trial are similarly situated. Although misdemeanants and felons are not *necessarily* similarly situated for equal protection purposes (see *In re Valenti* (1986) 178 Cal.App.3d 470, 474-475 [224 Cal.Rptr. 10] and *People v. Hibbard* (1991) 231 Cal.App.3d 145 [282 Cal.Rptr. 351] [felons and misdemeanants not similarly situated for purposes of consecutive sentencing law]), we agree that with respect to the purpose underlying Penal Code title 10, chapter 6, misdemeanor and felony defendants suspected of mental incompetence due to a mental disorder are sufficiently similar that some level of scrutiny is required of the differing treatment of misdemeanor defendants under section 1367.1.

The second step in equal protection analysis is to determine the appropriate standard of scrutiny to apply to a classification. Pederson maintains that section 1367.1 invokes strict scrutiny. The People do not address the required level of scrutiny, but instead simply concede that section 1367.1 fails even the rational basis test, where the state is merely required to establish that the distinction between two groups bears some rational relationship to a legitimate state end. (*McDonald v. Board of Election* (1969) 394 U.S. 802, 809 [89 S.Ct. 1404, 1409-1410, 22 L.Ed.2d 739].)

We conclude that strict scrutiny of section 1367.1 is compelled by the substantial liberty interest involved in the statute's "detour" through LPS

commitment proceedings. Because confinement in a mental institution constitutes a "massive curtailment of liberty" (*Humphrey v. Cady* (1972) 405 U.S. 504, 509 [92 S.Ct. 1048, 1052, 31 L.Ed.2d 394]) even for relatively short periods of time (*Doe v. Gallinot* (9th Cir. 1981) 657 F.2d 1017, 1022 [due process requires independent review of probable cause for LPS detention beyond the initial 72 hours under the LPS Act]), strict scrutiny is applied to involuntary civil commitment schemes claimed to violate the rights of similarly situated groups. (*People v. Buffington* (1999) 74 Cal.App.4th 1149, 1156 [88 Cal.Rptr.2d 696].)

■ If a classification scheme is subject to strict scrutiny because it affects a fundamental interest, the presumption of constitutionality that would otherwise pertain falls away, the burden shifts, and the state must both establish a compelling interest that justifies the law and also demonstrate that the distinctions drawn by the law are necessary to further that state interest. (*People v. Saffell* (1979) 25 Cal.3d 223, 228 [157 Cal.Rptr. 897, 599 P.2d 92], citing *People v. Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375].) Section 1367.1 does not survive that test.

■ We discern no compelling state interest in requiring misdemeanor defendants suspected of incompetence due to a mental disorder to submit to LPS involuntary evaluation and treatment in lieu of or prior to a competency determination. In both misdemeanor and felony cases, competency proceedings are triggered when defense counsel announces a belief that the accused may be mentally incompetent, or when the trial court announces a doubt as to the accused's competence. In felony cases, the announcement triggers a competence hearing, for which expert witnesses are appointed. (§ 1369.) But in misdemeanor cases, the announcement triggers a referral "for evaluation and treatment in accordance with section 4011.6," the same procedure prescribed when it is suspected that a sentenced prisoner in local custody is mentally disordered. (§ 1367.1, subd. (b).) This procedure results in an involuntary 72-hour period of medical evaluation of whether the patient is dangerous to himself or others. Such an evaluation is not an evaluation of competence to stand trial. It also has the effect of delaying the hearing on competence to stand trial.

The Legislature's sole ascertainable interest in enacting section 1367.1 was shifting responsibility and costs from the State Department of Mental Health to local mental health authorities for evaluation and treatment of misdemeanor defendants thought to be mentally disordered. Cost shifting, however, does not qualify as a compelling state interest. When a statutory classification is subject to strict scrutiny, the state must do more than show that the classification saves money. (*Boren v. Department of Employment Dev.* (1976) 59 Cal.App.3d 250, 261 [130 Cal.Rptr. 683].)

Finding no compelling state interest, we conclude that section 1367.1 is unconstitutional on equal protection grounds. Having done so, we need not address petitioner's contentions that the statute is also unconstitutional on speedy trial and due process grounds.

*Severance of the Invalid Provision*

■ We may sever an unconstitutional provision from a statute if the remainder is "complete in itself" and would have been adopted without the severed provision. (*Leaming v. Municipal Court* (1974) 12 Cal.3d 813, 816 [117 Cal.Rptr. 657, 528 P.2d 745].) ■ We may also reform a statute in order to preserve it against invalidation when "(i) it is possible to reform the statute in a manner that closely effectuates policy judgments clearly articulated by the enacting body, and (ii) the enacting body would have preferred the reformed construction to invalidation of the statute." (*Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 661 [47 Cal.Rptr.2d 108, 905 P.2d 1248].)

■ Pederson maintains that the constitutional infirmities of section 1367.1 can be remedied only by declaring section 1367.1 invalid in its entirety and by striking reference to it in section 1367. We agree. If that were to occur, procedures governing misdemeanor defendants suspected of incompetence to stand trial due to a mental disorder would be included in section 1368, as they were before section 1367.1 was enacted.

We reject the People's position. The People contend that section 1367.1 need not be wholly invalidated, because its only unconstitutional provisions are subdivisions (b) and (c), which require the court to refer a defendant for evaluation and treatment under section 4011.6 and suspend criminal proceedings during the evaluation and treatment. The People maintain that section 1367.1 would be constitutional if subdivisions (b) and (c) and the reference to section 4011.6 in section 1367.1 (d) were deleted.[6]

The language of section 1367.1, subdivision (a) parallels that of section 1368, subdivision (a). The only difference between the two subdivisions is that section 1367.1, subdivision (a) speaks in terms of mental disorder, while section 1368, subdivision (a) speaks in terms of mental competence.

Section 1367.1, subdivision (d) provides for a misdemeanor defendant's return to court after completion of section 4011.6 evaluation and treatment,

---

[6]The People also maintain that if section 1367.1 were stricken in its entirety and section 1368 applied to misdemeanor defendants, section 1370, which provides for state hospital treatment of felony defendants found incompetent to stand trial, would be applied to incompetent misdemeanor defendants instead of section 1370.01, which provides for county mental health treatment. We find no support for this proposition.

and for initiation of competency proceedings under sections 1368.1 and 1369 if the court continues to harbor a doubt concerning the defendant's competence. Were we to strike references in section 1367.1, subdivision (d), to section 4011.6 evaluation and treatment, subdivision (d) would read: "[T]he judge may order that the question of the defendant's mental competence to stand trial is to be determined in a hearing held pursuant to Sections 1368.1 and 1369. If the defendant is found mentally incompetent, then the provision of Section 1370.01 shall apply."

A section 1367.1 comprised of subdivision (a) and an amended subdivision (d), although constitutional, would be without provisions comparable to those in section 1368, subdivisions (b) and (c), that provide for (1) the defendant's counsel's response to the court's stated doubt concerning the defendant's mental competence; (2) the court's discretion to order a hearing under sections 1368.1 and 1369 notwithstanding counsel's belief that the defendant is competent; and (3) suspension of criminal proceedings until the competence of the defendant is determined. The statute would be incomplete. We therefore decline to save subdivisions (a) and (d).

We also hold that section 1367.1 cannot be reformed. Judicial reformation requires the possibility of rewriting a statute in a manner that closely effectuates policy judgments clearly stated by the Legislature, and a result that is more consistent with legislative intent than would be outright invalidation. (*Kopp v. Fair Pol. Practices Com., supra,* 11 Cal.4th at pp. 642-643.) The sole discernable policy judgment associated with the enactment of section 1367.1 is a shifting of mental competency evaluation and related costs from the State Department of Mental Health to local mental health directors. Rewriting section 1367.1 to reflect this policy judgment would entail such a comprehensive rewriting of the statute as to place this court in the untenable role of drafter rather than interpreter.

In addition, we reject the possibility of reforming section 1367.1 by reforming its "evaluation and treatment in accordance with Section 4011.6" (§ 1367.1, subds. (b) & (c)) requirement to include *only* the 72-hour evaluation and treatment provided by Welfare and Institutions Code section 5150, excluding the remaining section 4011.6 LPS provisions. Not only would such a reformation raise additional constitutional issues, but we find no reasonable basis for thinking that the Legislature intended, in enacting section 1367.1, to evaluate and restore a misdemeanor defendant to competence within the 72-hour limit of Welfare and Institutions Code section 5150.

Since section 1367.1 is unconstitutional, henceforth competence issues regarding misdemeanor cases shall be handled according to section 1368, the same as felony cases.

## Disposition

The order to show cause, having served its purpose, is discharged, and the petition for writ of mandate is denied as moot. (*Renee S. v. Superior Court* (1999) 76 Cal.App.4th 187, 198 [90 Cal.Rptr.2d 134].)

Doi Todd, J., and Ashmann-Gerst, J., concurred.