[No. F062189. Fifth Dist. July 3, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL MIRAMONTES CRUZ, JR., Defendant and Appellant.

Counsel

Paul Stubb, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Rachelle A. Newcomb and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

DETJEN, J.—On April 4, 2011, the Governor approved the "2011 Realignment Legislation addressing public safety" (Stats. 2011, ch. 15, § 1) which, together with subsequent related legislation, significantly changed the sentencing and supervision of persons convicted of felony offenses.[1] The sentencing changes made by the Act apply, by its express terms, "prospectively to any person sentenced on or after October 1, 2011." (Pen. Code, § 1170, subd. (h)(6).)[2] The question raised on appeal is whether a defendant, who was sentenced before October 1, 2011, but whose conviction is not yet final on appeal, is entitled to be resentenced under the Act's provisions, specifically subdivision (h) of section 1170. We conclude the answer is no. The sentencing changes made by the Act apply only to persons sentenced on or after October 1, 2011, and such prospective-only application does not violate equal protection.[3]

## PROCEDURAL HISTORY

On March 25, 2011, a jury convicted defendant Manuel Miramontes Cruz, Jr., of transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a); count 1), and possessing methamphetamine for sale (*id.*, § 11378; count 2).[4] Two prior narcotic conviction allegations (Health & Saf. Code, § 11370.2, subd. (c)) were stricken upon the prosecutor's motion, in return for

---

[1] We refer to the initial enactment and subsequent legislation collectively as "the Act."

[2] All statutory references are to the Penal Code unless otherwise stated.

[3] As part of the Act, section 4019 was amended with respect to conduct credits awarded, by the statute's terms, "to prisoners who are confined . . . for a crime committed on or after October 1, 2011." (§ 4019, subd. (h), added by Stats. 2011, ch. 15, § 482, as amended by Stats. 2011, ch. 39, § 53.) Whether, despite the limitation, the amendment applies retroactively, is an issue that is not before us on this appeal.

[4] A third count, charging misdemeanor false personation (§ 529, former subd. 2), was dismissed in the interest of justice. The facts of the offenses are not pertinent to the issues raised on appeal.

defendant's agreement to immediate sentencing. Defendant was sentenced to state prison for a total unstayed term of four years and ordered to pay a restitution fine. A parole revocation restitution fine (§ 1202.45) was stayed pending successful completion of parole.

## DISCUSSION

The Act added section 17.5 to the Penal Code. (Stats. 2011, ch. 15, § 229.) That statute provides:

"(a) The Legislature finds and declares all of the following:

"(1) The Legislature reaffirms its commitment to reducing recidivism among criminal offenders.

"(2) Despite the dramatic increase in corrections spending over the past two decades, national reincarceration rates for people released from prison remain unchanged or have worsened. National data show that about 40 percent of released individuals are reincarcerated within three years. In California, the recidivism rate for persons who have served time in prison is even greater than the national average.

"(3) Criminal justice policies that rely on building and operating more prisons to address community safety concerns are not sustainable, and will not result in improved public safety.

"(4) California must reinvest its criminal justice resources to support community-based corrections programs and evidence-based practices that will achieve improved public safety returns on this state's substantial investment in its criminal justice system.

"(5) Realigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs, which are strengthened through community-based punishment, evidence-based practices, improved supervision strategies, and enhanced secured capacity, will improve public safety outcomes among adult felons and facilitate their reintegration back into society.

"(6) Community-based corrections programs require a partnership between local public safety entities and the county to provide and expand the use of community-based punishment for low-level offender populations. Each county's Local Community Corrections Partnership, as established in paragraph (2) of subdivision (b) of Section 1230, should play a critical role in developing programs and ensuring appropriate outcomes for low-level offenders.

"(7) Fiscal policy and correctional practices should align to promote a justice reinvestment strategy that fits each county. 'Justice reinvestment' is a data-driven approach to reduce corrections and related criminal justice spending and reinvest savings in strategies designed to increase public safety. The purpose of justice reinvestment is to manage and allocate criminal justice populations more cost-effectively, generating savings that can be reinvested in evidence-based strategies that increase public safety while holding offenders accountable.

"(8) 'Community-based punishment' means correctional sanctions and programming encompassing a range of custodial and noncustodial responses to criminal or noncompliant offender activity. Community-based punishment may be provided by local public safety entities directly or through community-based public or private correctional service providers, and include, but are not limited to, the following:

"(A) Short-term flash incarceration in jail for a period of not more than 10 days.

"(B) Intensive community supervision.

"(C) Home detention with electronic monitoring or GPS monitoring.

"(D) Mandatory community service.

"(E) Restorative justice programs such as mandatory victim restitution and victim-offender reconciliation.

"(F) Work, training, or education in a furlough program pursuant to Section 1208.

"(G) Work, in lieu of confinement, in a work release program pursuant to Section 4024.2.

"(H) Day reporting.

"(I) Mandatory residential or nonresidential substance abuse treatment programs.

"(J) Mandatory random drug testing.

"(K) Mother-infant care programs.

"(L) Community-based residential programs offering structure, supervision, drug treatment, alcohol treatment, literacy programming, employment counseling, psychological counseling, mental health treatment, or any combination of these and other interventions.

"(9) 'Evidence-based practices' refers to supervision policies, procedures, programs, and practices demonstrated by scientific research to reduce recidivism among individuals under probation, parole, or post release supervision.

"(b) The provisions of this act are not intended to alleviate state prison overcrowding."

■ The Act shifted responsibility for housing and supervising certain felons from the state to the individual counties. Thus, insofar as is germane to this appeal, the Act provides that, once probation has been denied, felons who are eligible to be sentenced under realignment will serve their terms of imprisonment in local custody rather than state prison.[5] If the penal statute specifies the defendant shall be punished by imprisonment pursuant to section 1170, subdivision (h), without specifying a particular term of punishment, the crime is "punishable by a term of imprisonment in a county jail for 16 months, or two or three years." (*Id.*, subd. (h)(1).) If the penal statute calls for punishment pursuant to section 1170, subdivision (h), and specifies a term, the offense is "punishable by imprisonment in a county jail for the term described in the underlying offense" (*id.*, subd. (h)(2)), even when the sentence exceeds the 16-month, two-year, or three-year triad. The Act does not change the length of term or sentencing triad for any offense.

In sentencing a defendant to county jail under section 1170, subdivision (h)(1) or (2), the trial court has an alternative to a straight commitment to jail for the term specified by statute (*id.*, subd. (h)(5)(A)). It can impose a hybrid sentence in which it suspends execution "of a concluding portion of the term" and sets terms and conditions for mandatory supervision by the county probation officer. (*Id.*, subd. (h)(5)(B).) Additionally, a defendant sentenced under section 1170, subdivision (h)—whether to a straight jail term

---

[5] Defendants not eligible include those who (1) have a current or prior conviction for a serious felony described in section 1192.7, subdivision (c) or a violent felony described in section 667.5, subdivision (c), or a prior out-of-state felony conviction for an offense that would qualify as a serious or violent felony under California law; (2) are required to register as sex offenders under section 290 et seq.; (3) are convicted of a crime and have an imposed enhancement pursuant to section 186.11; or (4) those who commit crimes that fall within subdivision (a) of section 18. The sentence for such defendants is to be served in state prison. (§ 1170, subd. (h)(3).)

Realignment does not affect a defendant's eligibility for dispositions other than imprisonment, such as pretrial diversion, deferred entry of judgment, or a grant of probation pursuant to section 1203.1. (§ 1170, subd. (h)(4).)

or to a hybrid term—is not subject to a state parole period after his or her sentence is completed. (§ 3000, subd. (a)(1) [parole included in sentence resulting in imprisonment in the state prison].)[6] A defendant sentenced to state prison is subject to a mandatory period of supervision following release, either parole supervision by the state (§ 3000 et seq.), or postrelease community supervision by a county probation department (§ 3450 et seq.).

The offenses of which defendant was convicted and for which he was sentenced to prison now require, if probation is denied, imposition of a county jail sentence. (Health & Saf. Code, § 11378, as amended by Stats. 2011, ch. 15, § 172, eff. Apr. 4, 2011, operative Oct. 1, 2011; Health & Saf. Code, § 11379, subd. (a), as amended by Stats. 2011, ch. 15, § 174, eff. Apr. 4, 2011, operative Oct. 1, 2011.)

In *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] (*Estrada*), the California Supreme Court examined two amended statutes that mitigated punishment (former §§ 3044, 4530) and found they applied retroactively to an act committed prior to the effective date of the amendments when the effective date of the amendments occurred before the date of final judgment in the case.[7] (*Estrada, supra,* 63 Cal.2d at p. 744.) "[D]id the Legislature intend the old or new statute to apply? Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional. It has not done so. We must, therefore, attempt to determine the legislative intent from other factors." (*Ibid.*) The state high court then examined Penal Code section 3, Government Code section 9608, and common law, to determine the Legislative intent for the date of application. (*Estrada, supra,* 63 Cal.2d at pp. 744–748.)

Contrary to the statutes examined in *Estrada,* the amended statute in this case (§ 1170, subd. (h)) contains an express statement (a saving clause) by the Legislature as to when the amendment applies. The Act states, "[t]he sentencing changes . . . shall be applied prospectively to any person sentenced on or after October 1, 2011." (§ 1170, subd. (h)(6).) Accordingly, even assuming the Act mitigates punishment, the rule of *Estrada* does not apply.[8]

---

[6] Accordingly, such a defendant is not subject to a parole revocation restitution fine. (§ 1202.45; cf. *People v. Jenkins* (2006) 140 Cal.App.4th 805, 819 [44 Cal.Rptr.3d 788]; *People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1183 [83 Cal.Rptr.2d 157].)

[7] The amendments to sections 3044 and 4530 had the effect (for the *Estrada* defendant) of reducing both the term of imprisonment and the time necessary to spend in prison prior to parole eligibility.

[8] We are not convinced that serving a sentence in county jail instead of state prison amounts to lesser punishment where, as under the Act, the sentences are the same length. Nothing before us suggests, for instance, that the rules and regulations of prisons are more burdensome or stricter than those of jails, at least with respect to the types of offenders eligible for

We find *People v. Floyd* (2003) 31 Cal.4th 179 [1 Cal.Rptr.3d 885, 72 P.3d 820] (*Floyd*) instructive. In that case, voters passed Proposition 36, the Substance Abuse and Crime Prevention Act of 2000 (§ 1210 et seq.), two days before the defendant was sentenced. As described by the California Supreme Court, "Proposition 36 amended state law to require that certain adult drug offenders receive probation, conditioned on participation in and completion of an appropriate drug treatment program, instead of receiving a prison term or probation without drug treatment. [Citation.]" (*Floyd, supra,* at p. 183.) The initiative specified that its provisions were to become effective July 1, 2001, and be applied prospectively. (*Ibid.*) Nevertheless, the defendant argued, based on *Estrada,* that he was entitled to the initiative's ameliorated punishment and other benefits. (*Floyd, supra,* at pp. 183–184.) The state high court disagreed. It found the initiative's express saving clause, specifying prospective application, to reveal legislative intent to avoid the *Estrada* rule. (*Floyd, supra,* 31 Cal.4th at p. 185.) Further support for this construction was the additional fact the initiative's effective date was postponed. " 'Postponement of the effective date for an act indicates that it should have only prospective application.' [Citations.]" (*Id.* at p. 187.) The court found "inescapable" the inference "that the voters wanted to ensure an orderly transition by an immediate appropriation of $60 million to the Substance Abuse Treatment Trust Fund to expand existing treatment programs and create new ones *before* their caseloads increased—a sequence that depended on prospective application of the act." (*Ibid.*)

█ Insofar as subdivision (h) of section 1170 is concerned, the Act contains both a saving clause, expressly providing for prospective application of its terms to persons sentenced on or after October 1, 2011, and a postponed operative date.[9] A postponed operative date allows time for a transition to community-based punishment; time that is necessary for counties to develop

---

sentencing under section 1170, subdivision (h). Moreover, in our view, the mere *possibility* a defendant may, in the trial court's discretion, receive a hybrid sentence cannot be said to lessen punishment. On the other hand, defendants who have served their sentences pursuant to section 1170, subdivision (h) will be free of the period of parole or postrelease community supervision mandated for those who have served their sentences in state prison. (§§ 3000, subd. (a)(1), 3451, subd. (a).) Because "parolees are on the 'continuum' of state-imposed punishments" (*Samson v. California* (2006) 547 U.S. 843, 850 [165 L.Ed.2d 250, 126 S.Ct. 2193]) and are viewed as remaining in the legal custody of California's Department of Corrections and Rehabilitation throughout their term of parole (*id.* at p. 851; cf. *People v. Burgener* (1986) 41 Cal.3d 505, 531 [224 Cal.Rptr. 112, 714 P.2d 1251], disapproved on another ground in *People v. Reyes* (1998) 19 Cal.4th 743 753–754, 756 [80 Cal.Rptr.2d 734, 968 P.2d 445]), and because imposition of a parole revocation restitution fine pursuant to section 1202.45 is viewed as punitive for ex post facto purposes (*People v. Flores* (2009) 176 Cal.App.4th 1171, 1181–1182 [98 Cal.Rptr.3d 450]), we will assume for our analysis that the Act has at least some mitigating effect on punishment.

[9] The Act was enacted with the provision its operative date would be postponed six months to October 1, 2011.

and/or expand their community-based corrections programs before their long-term responsibility for convicted criminal offenders increases. (See *Floyd, supra*, 31 Cal.4th at p. 187.)[10]

∎    The Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a) of the California Constitution both prohibit the denial of equal protection of the laws. "The equal protection guarantees of [both Constitutions] are substantially equivalent and analyzed in a similar fashion" (*People v. Leng* (1999) 71 Cal.App.4th 1, 11 [83 Cal.Rptr.2d 433]), and they unquestionably apply to penal statutes (*People v. Bizieff* (1990) 226 Cal.App.3d 130, 138 [276 Cal.Rptr. 235]).

" 'Broadly stated, equal protection of the laws means "that no person or class of persons shall be denied the same protection of the laws [that] is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness." [Citation.]' [Citation.] . . . Thus, . . . a threshold requirement of any meritorious equal protection claim 'is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. [Citation.]' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." [Citation.]' [Citation.]" (*People v. Guzman* (2005) 35 Cal.4th 577, 591–592 [25 Cal.Rptr.3d 761, 107 P.3d 860], italics omitted; see *Reed v. Reed* (1971) 404 U.S. 71, 75–76 [30 L.Ed.2d 225, 92 S.Ct. 251]; *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199–1200 [39 Cal.Rptr.3d 821, 129 P.3d 29].)

Defendant contends that denying him the benefits of the Act violates his right to equal protection under the federal and state Constitutions. By creating two classes of inmates—those sentenced before October 1, 2011, whose sentences are served in state prison and who are subject to some form of parole, and those sentenced on or after October 1, 2011, whose sentences (or some portion thereof) are served in county jail and who are not subject to parole—the Act, he says, treats two similarly situated groups in an unequal manner. In defendant's view, no compelling state interest justifies this disparity in treatment.

---

[10] We recognize that *Floyd* addressed an enactment with a postponed *effective* date, whereas the Act has a postponed *operative* date. We further recognize that the effective and operative dates of a statute are not necessarily one and the same. (See *People v. Alford* (2007) 42 Cal.4th 749, 753, fn. 2 [68 Cal.Rptr.3d 310, 171 P.3d 32]; *People v. Hinojosa* (1980) 103 Cal.App.3d 57, 61–62 [162 Cal.Rptr. 793].) Particularly in light of the express declaration of intended prospective-only application contained in section 1170, subdivision (h)(6), this does not change our analysis or conclusion. (Cf. *People v. Alford, supra*, 42 Cal.4th at pp. 754–755; *Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 223–224 [105 Cal.Rptr.2d 407, 19 P.3d 1148].)

The Attorney General implicitly concedes section 1170, subdivision (h) created two similarly situated classes of persons, with the only distinguishing characteristic being whether they were sentenced before, or on or after, the Act's operative date of October 1, 2011.

Because the law treats these similarly situated groups differently, we must undertake a second level of analysis and subject the law to the level of scrutiny that is constitutionally required. (*People v. Goslar* (1999) 70 Cal.App.4th 270, 277 [82 Cal.Rptr.2d 558].)

■ "The concept [of equal protection] recognizes that persons similarly situated with respect to the legitimate purpose of the law receive like treatment, but it does not . . . require absolute equality. [Citations.] Accordingly, a state may provide for differences as long as the result does not amount to invidious discrimination. [Citations.]" (*People v. Romo* (1975) 14 Cal.3d 189, 196 [121 Cal.Rptr. 111, 534 P.2d 1015].) "Equal protection . . . require[s] that a distinction made have some relevance to the purpose for which the classification is made." (*Baxstrom v. Herold* (1966) 383 U.S. 107, 111 [15 L.Ed.2d 620, 86 S.Ct. 760].)

■ "In resolving equal protection issues, the United States Supreme Court has used three levels of analysis. Distinctions in statutes that involve suspect classifications or touch upon fundamental interests are subject to strict scrutiny, and can be sustained only if they are necessary to achieve a compelling state interest. Classifications based on gender are subject to an intermediate level of review. But most legislation is tested only to determine if the challenged classification bears a rational relationship to a legitimate state purpose. [Citations.]" (*People v. Hofsheier, supra*, 37 Cal.4th at p. 1200; see, e.g., *Romer v. Evans* (1996) 517 U.S. 620, 631 [134 L.Ed.2d 855, 116 S.Ct. 1620].)

"[W]hen reviewing legislative classifications under the equal protection clauses of the California and United States Constitutions, the legislation under examination is generally clothed in a presumption of constitutionality. However, once it is determined that the classification scheme affects a fundamental interest or right, the burden shifts; thereafter the state must first establish that it has a compelling interest which justifies the law and then demonstrate that the distinctions drawn by the law are necessary to further that purpose. [Citations.]" (*People v. Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375] (*Olivas*), italics omitted.) By contrast, " ' " ' a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. [Citations.] Where there are

"plausible reasons" for [the classification], "our inquiry is at an end." ' " ' [Citations.]" (*People v. Hofsheier, supra,* 37 Cal.4th at pp. 1200–1201, italics omitted.)

■ In *Olivas, supra,* 17 Cal.3d at page 251, the California Supreme Court declared: "[P]ersonal liberty is a fundamental interest, second only to life itself, as an interest protected under both the California and United States Constitutions." As unambiguous as this statement is, determining which level of scrutiny applies is not always straightforward where a penal provision is claimed to touch upon a criminal offender's liberty interest.[11] (See *People v. Applin* (1995) 40 Cal.App.4th 404, 409 [46 Cal.Rptr.2d 862] & cases cited.)

In some instances, courts have subjected the challenged law to strict scrutiny and employed the compelling state interest test. (See, e.g., *People v. Saffell* (1979) 25 Cal.3d 223, 233–235 [157 Cal.Rptr. 897, 599 P.2d 92] [inability of persons committed to state hospital for treatment as mentally disordered sex offenders to earn conduct credit available to inmates of correctional facilities]; *Olivas, supra,* 17 Cal.3d at pp. 239, 251–257 [juvenile misdemeanants committed to Youth Authority for term potentially longer than maximum jail term imposable for same offense committed by adult]; *Pederson v. Superior Court* (2003) 105 Cal.App.4th 931, 941 [130 Cal.Rptr.2d 289] [defendants suspected of incompetence to stand trial treated differently based on whether they were charged with felonies or misdemeanors]; *In re Henson* (1981) 123 Cal.App.3d 518, 521–522 & fn. 5 [176 Cal.Rptr. 693] [regulations under which parole release date calculated depended on whether life prisoners had release date established prior to specified date]; *People v. Gonzalez* (1978) 81 Cal.App.3d 274, 276–278 [146 Cal.Rptr. 417] [different sentences for sodomy depending on ages of victim and offender]; *People v. Terflinger* (1978) 77 Cal.App.3d 302, 303–304 [143 Cal.Rptr. 501] [same penalty imposed for attempted or completed escape]; *In re Werden* (1977) 76 Cal.App.3d 79, 80, 82–84 [142 Cal.Rptr. 622] [disparate terms for addicted felons under jurisdiction of California Rehabilitation Center versus nonaddicts imprisoned for same offense]; *Cotton v. Municipal Court* (1976) 59 Cal.App.3d 601, 605–607 [130 Cal.Rptr. 876] [imposition of different criminal sanctions on fathers and mothers for willful failure to support minor children]; see also *People v. Sage* (1980) 26 Cal.3d 498, 507–508 & fn. 6 [165 Cal.Rptr. 280, 611 P.2d 874] [denial of presentence conduct credit to detainee eventually convicted of felony and sentenced to prison, while awarding such credit to detainee eventually convicted of misdemeanor and sentenced to county jail].)

---

[11] Defendant asserts the Act affects two similarly situated groups. He does not, however, contend he belongs to a suspect classification for purposes of the Act, nor does it appear he could successfully do so. (See *Moss v. Clark* (4th Cir. 1989) 886 F.2d 686, 690 [prisoners are not suspect class; status of incarceration is neither immutable characteristic nor invidious basis of classification]; accord, *Michael v. Ghee* (6th Cir. 2007) 498 F.3d 372, 379.)

In others, the rational relationship test has been deemed appropriate. (See, e.g., *McGinnis v. Royster* (1973) 410 U.S. 263, 264–265, 270 [35 L.Ed.2d 282, 93 S.Ct. 1055] [" 'good time' " credit awarded prisoners exhibiting good behavior during prison confinement, but denied for presentence incarceration in county jails]; *People v. Wilkinson* (2004) 33 Cal.4th 821, 836–838 [16 Cal.Rptr.3d 420, 94 P.3d 551] [battery on custodial officer without injury designated a felony under one statute, while battery on custodial officer with injury designated a wobbler offense under other statute]; *In re Kapperman* (1974) 11 Cal.3d 542, 544–545, 546 [114 Cal.Rptr. 97, 522 P.2d 657] [award of presentence custody credit made prospective only according to date person delivered into custody of Director of Corrections]; *People v. Alvarez* (2001) 88 Cal.App.4th 1110, 1114–1116 [106 Cal.Rptr.2d 447] [murderers using firearms subjected to greater sentence enhancement than murderers using other kinds of deadly weapons]; *People v. Edwards* (1991) 235 Cal.App.3d 1700, 1705–1706 [1 Cal.Rptr.2d 631] [differing eligibility for diversion depending on scheme under which charges brought]; *People v. Flores* (1986) 178 Cal.App.3d 74, 88 [223 Cal.Rptr. 465] [different degrees of attempted murders punished equally]; *In re Stinnette* (1979) 94 Cal.App.3d 800, 804–806 & fn. 4 [155 Cal.Rptr. 912] [prisoners sentenced before statute's operative date could only earn credits reducing portion of sentence remaining after that date]; *Moss v. Clark, supra,* 886 F.2d at pp. 689–690 [inmates convicted of District of Columbia code offenses awarded different conduct credits based solely on whether they were assigned to District of Columbia or federal correctional facility].)

■ We are hard pressed to divine a penal provision that does not have some potential effect on someone's liberty interest. As the California Supreme Court has explained, and the United States Supreme Court has recognized, where the amendment adopted by a statute "has only an incidental or marginal effect on 'fundamental' rights, application of the 'rational relationship' test is the appropriate analytical standard. [Citations.]" (*In re Flodihn* (1979) 25 Cal.3d 561, 568 [159 Cal.Rptr. 327, 601 P.2d 559], citing *Zablocki v. Redhail* (1978) 434 U.S. 374, 386 [54 L.Ed.2d 618, 98 S.Ct. 673] & *Califano v. Jobst* (1977) 434 U.S. 47, 53–54 [98 S.Ct. 95, 54 L.Ed.2d 228]; cf. *Board of Supervisors v. Local Agency Formation Com.* (1992) 3 Cal.4th 903, 914 [13 Cal.Rptr.2d 245, 838 P.2d 1198].)

■ In our view, the sentencing changes created by section 1170, subdivision (h) do not directly affect a defendant's fundamental interest in liberty. His or her statutorily prescribed sentence is no greater under the law as it existed prior to the Act's operative date than under the Act's provisions. (See *In re Stinnette, supra,* 94 Cal.App.3d at p. 805, fn. 4; cf. *Scherling v. Superior Court* (1978) 22 Cal.3d 493, 502–503 [149 Cal.Rptr. 597, 585 P.2d 219].) We do not believe he or she has a protectable interest in serving that sentence in county jail as opposed to state prison. (Cf. *Meachum v. Fano* (1976) 427 U.S.

215, 225 [96 S.Ct. 2532, 49 L.Ed.2d 451] [14th Amend. liberty interest not implicated when prisoner transferred from one institution to another with more severe rules].) Similarly, he or she has no fundamental interest in the possibility of a conditional early release via a hybrid sentence. (Cf. *Greenholtz v. Nebraska Penal Inmates* (1979) 442 U.S. 1, 7 [60 L.Ed.2d 668, 99 S.Ct. 2100] [no constitutional or inherent right of convicted person to be conditionally released before expiration of valid sentence], abrogated on another ground as stated in *Wilkinson v. Austin* (2005) 545 U.S. 209, 229 [162 L.Ed.2d 174, 125 S.Ct. 2384]; *People v. Wilkinson, supra,* 33 Cal.4th at p. 838 [defendant does not have fundamental interest in specific term of imprisonment]; *People v. Edwards, supra,* 235 Cal.App.3d at p. 1706 [equal protection challenges based on statutory ineligibility for diversion are reviewed under rational basis standard].) We recognize, as previously stated, that parole has been viewed as punishment or " 'an established variation on imprisonment' " (*Samson v. California, supra,* 547 U.S. at p. 850), such that freedom from a mandatory period of parole arguably directly affects a fundamental liberty interest by lessening punishment.[12]

In *Floyd,* however, the California Supreme Court appeared, through its discussion of various cases (see, e.g., *Floyd, supra,* 31 Cal.4th at pp. 189–191), to countenance application of the rational relationship test to the defendant's equal protection claim, despite the fact Proposition 36 directly lessened punishment by mandating probation for certain offenders (*Floyd, supra,* 31 Cal.4th at pp. 183, 184; see § 1210.1, subd. (a)).[13] The court stated:

"Defendant has not cited a single case, in this state or any other, that recognizes an equal protection violation arising from the timing of the effective date of a statute lessening the punishment for a particular offense. Numerous courts, however, have rejected such a claim—including this court. [Citation.] 'The Legislature properly may specify that such statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written.' [Citations.] . . .

"Moreover, *Estrada* itself recognized that when the Legislature has amended a statute to lessen the punishment, its determination as to which

---

[12] Parole also impinges upon the fundamental constitutional right to vote (Cal. Const., art. II, § 4) and, depending upon the conditions imposed on the parolee, is likely also to affect the constitutional rights to travel, to freely associate, and to remain free of unwarranted searches and seizures.

[13] *Floyd* was not a case in which the defendant assumed or conceded application of the rational relationship test. Rather, Floyd took the position no compelling state interest justified the disparity in treatment that was based solely on the date of conviction. (*Floyd, supra,* 31 Cal.4th at p. 188.)

statute should apply to all convictions not yet final, '*either way*, would have been legal and constitutional.' [Citations.]" (*Floyd, supra*, 31 Cal.4th at pp. 188–189.)

Quoting *Sperry & Hutchinson Co. v. Rhodes* (1911) 220 U.S. 502, 505 [55 L.Ed. 561, 31 S.Ct. 490], the court concluded: " '[T]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.' [Citation.] Therefore, defendant's equal protection claim must fail." (*Floyd, supra*, 31 Cal.4th at p. 191.)

It is apparent from section 17.5 (set out *ante*) that the overall purpose of the Act is to reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending. Such purposes are legitimate and the Act bears a rational relationship to them. Clearly, community-based corrections programs are the core component of the Act. It requires no citation to authority to conclude such programs cost money, resources are limited, and increased reliance on such programs cannot succeed without a realignment of those limited resources. Prospective-only application of changes in sentencing based on the sentencing date is necessary to further the Act's purpose, by allowing counties to muster the resources—whether from the state or from their own budgets—to deal with the influx of prisoners, and to develop the necessary community-based punishments, programs, and supervision required under the Act. It is also necessary to prevent overwhelming county jails with numbers of inmates for which local authorities are unprepared, which could easily result in those authorities having to take actions that severely impact public safety. The protection of public safety is a compelling state interest, as is the prevention of recidivism. (See *People v. Travis* (2006) 139 Cal.App.4th 1271, 1292 [44 Cal.Rptr.3d 177]; *Guevara v. Superior Court* (1998) 62 Cal.App.4th 864, 872 [73 Cal.Rptr.2d 421].) Moreover, the distinction drawn by section 1170, subdivision (h)(6) is necessary so as not to overwhelm trial court resources by requiring the resentencing of numerous inmates.[14] The distinction maintains the integrity of sentences that were valid when imposed and ensures the

---

[14] In *People v. Sage, supra*, 26 Cal.3d 498, the California Supreme Court noted that the recomputation of time credits resulting from its decision invalidating, on equal protection grounds, the denial of presentence conduct credits to detainees eventually sentenced to prison, "should be a routine ministerial function" and did not necessitate remand, for new sentencing hearings, of those already sentenced. (*Id.* at p. 509, fn. omitted.) Here, by contrast, new formal sentencing hearings would be required so that trial courts could consider, as to each defendant, whether to impose straight jail time or a hybrid sentence. The burden on judicial and other state and local resources would be much greater than in *Sage*.

discretion exercised in the charging, plea bargaining, and sentencing decisions of the People and trial courts is not destabilized or nullified.[15]

■ The distinction drawn by section 1170, subdivision (h)(6), between felony offenders sentenced before, and those sentenced on or after, October 1, 2011, does not violate equal protection. Accordingly, defendant's existing sentence is lawful, and he is not entitled to a remand for resentencing under the Act's provisions.

## DISPOSITION

The judgment is affirmed.

Wiseman, Acting P. J., and Poochigian, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 10, 2012, S204671.

---

[15] In *In re Kapperman, supra*, 11 Cal.3d 542, the California Supreme Court found unpersuasive the People's argument that many plea agreements may have taken into consideration the period of presentence incarceration. (*Id.* at p. 550.) Although assuming presentence incarceration may have been a factor in some negotiated pleas, the court concluded that for the most part, "the presentence jail time would be insubstantial in relation to the statutory punishment." (*Ibid.*) By contrast, a term of imprisonment, followed by a mandatory period of parole, is likely to have been an important consideration in many, if not most, felony plea agreements.