Filed 11/14/14 unmodified opinion attached

CERTIFIED FOR PUBLICATION


COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LAVINA CAROL WOFFORD, | D064633 |
| Petitioner, | (San Diego County Super. Ct. No. SCD233212) |
| v. | |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Respondent; | [NO CHANGE IN JUDGMENT] |
| THE PEOPLE, | |
| Real Party in Interest. | |

THE COURT:

The Attorney General's petition for rehearing filed November 5, 2014, is

DENIED.

The opinion filed on October 22, 2014 is MODIFIED as follows:

1.  On page 13, the statutory citation immediately preceding Discussion part III.

shall be deleted and replaced with:

($ 1170, subd. (h)(5)(B)(i), italics added.)

2. On page 13, footnote 8 is deleted in its entirety and replaced with the following footnote 8:

[8]Section 1170, subdivision (h)(5) states: "The court, when imposing a sentence pursuant to paragraph (1) or (2) of this subdivision, may commit the defendant to county jail as follows: [¶] (A) For a full term in custody as determined in accordance with the applicable sentencing law. [¶] (B)(i) *For a term as determined in accordance with the applicable sentencing law, but suspend execution of a concluding portion of the term selected in the court's discretion*, during which time *the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court*. The period of supervision shall be mandatory, and may not be earlier terminated except by court order. Any proceeding to revoke or modify mandatory supervision under this subparagraph shall be conducted pursuant to either subdivisions (a) and (b) of Section 1203.2 or Section 1203.3 [addressing revocation or modification of probation and other release terms]. During the period when the defendant is under such supervision, unless in actual custody related to the sentence imposed by the court, the defendant shall be entitled to only actual time credit against the term of imprisonment imposed by the court. Any time period which is suspended because a person has absconded shall not be credited toward the period of supervision. [¶] (ii) *The portion of a defendant's sentenced term during which time he or she is supervised by the county probation officer pursuant to this subparagraph shall be*

2

*known as mandatory supervision*, and shall begin upon release from custody." (Italics added.)

We note that effective January 1, 2015, the wording of section 1170, subdivision (h)(5) has been changed to include language stating: "*Unless the court finds that, in the interests of justice, it is not appropriate in a particular case*, the court, when imposing a sentence pursuant to paragraph (1) or (2) of this subdivision, *shall suspend execution* of a concluding portion of the term for a period selected at the court's discretion." (§ 1170, subd. (h)(5)(A), (7), italics added.)

3. On page 19, following the sentence ending "to be served in the community," the statutory citation shall be deleted and replaced with the following:

(§ 1170, subd. (h)(5)(B)(i).)

**There is no change in the judgment.**

HUFFMAN, Acting P. J.

Copies to: All parties

3

Filed 10/22/14 unmodified version

CERTIFIED FOR PUBLICATION


COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LAVINA CAROL WOFFORD, | D064633 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. SCD233212) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

Proceedings in mandate after superior court denied released offender's motion for permission to apply for transfer of supervision to another state. Desiree A. Bruce-Lyle, Judge. Petition granted.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Petitioner.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Collette C. Cavalier and Amanda E. Casillas, Deputy Attorneys General, for Respondent and Real Party in Interest.

After being convicted of drug-related offenses, Lavina Wofford was sentenced under the Realignment Act[1] to serve a portion of her prison sentence released into the community under the mandatory supervision of the probation department. Among the many conditions of her mandatory supervision, Wofford is required to obtain the superior court's consent before moving to another state. Apart from mandatory supervision requirements, a released offender who wants to transfer his or her supervision to another state must also obtain the approval of the California office that administers out-of-state transfer requests under the Interstate Compact for Adult Offender Supervision (the Compact or Interstate Compact).

After she was released in the community under mandatory supervision, Wofford filed a motion in superior court requesting that she be permitted to submit an application to California's Interstate Compact office for a transfer of her supervision to another state. The court denied her request to apply to the Compact office, in part based on its conclusion that offenders serving mandatory supervision sentences are ineligible to apply for transfers under the Compact.

We conclude the court erred in ruling mandatory supervision releasees serving their sentences in the community under the Realignment Act are ineligible to apply for

---

[1] Our references to the Realignment Act are to the 2011 Realignment Legislation addressing public safety (Stats. 2011, ch. 15, § 1) and subsequent related legislation. (See Historical and Statutory Notes, 47 West's Ann. Pen. Code (2014 ed.) foll. § 17.5, p. 90; *People v. Cruz* (2012) 207 Cal.App.4th 664, 668.)

transfers under the Interstate Compact.  Accordingly, we grant the petition for writ of mandate.

## BACKGROUND

At proceedings in 2011 and 2012, Wofford was convicted of several drug-related offenses, and the trial court sentenced her to an eight-year prison term, to be served locally as a "split sentence" under the Realignment Act.  Her sentence consisted of three years served in jail and a five-year suspended sentence served while released into the community under mandatory supervision by the probation department.[2]

Wofford's terms of mandatory supervision while released into the community include the condition that she obtain the "court's and [probation officer's] written consent before moving out of state."  In August 2013, Wofford filed a motion requesting that she be permitted to apply for a transfer of her supervision to Virginia through the Interstate Compact.  She contended she was eligible to apply for a transfer under the Compact because (1) she was an offender under supervision as defined in the rules governing the Compact, and (2) a transfer was permissible under California's Realignment Act and consistent with its rehabilitative goals.

Wofford told the court she had been in compliance with her supervision terms for six months; she has strong family and financial support in Virginia, whereas in California she was struggling financially; Virginia (a Compact member) has a supervision protocol similar to California's and will be required to supervise her for the length of time

---

[2]    We grant the Attorney General's unopposed request that we take judicial notice of the order granting Wofford mandatory supervision.  (Evid. Code, §§ 452, 459.)

established by California; and California retained the right to bring her back to the state. Wofford submitted a letter from her daughter which described the stable, supportive environment the daughter and her family could provide for Wofford in Virginia and expressing the daughter's willingness to assist in Wofford's supervision plan.

The District Attorney opposed Wofford's request to apply for a transfer, arguing that although mandatory supervision releasees could fall within the broad definitions of "offender" and "supervision" set forth in the Compact rules, these rules also reflected that not all such offenders were eligible. The District Attorney contended that mandatory supervision releasees were not meant to be covered by the Compact because, unlike probationers, they are inmates serving a prison term in the community. The District Attorney also asserted that the Compact should not be applied to mandatory supervision releasees because they are subject to specialized supervision mechanisms (including a centralized review court, a comprehensive, personalized case plan, and specially-trained probation officers), and, concerning this case, Virginia does not have supervision comparable to this mandatory supervision. The District Attorney also argued the court should deny Wofford's request because she had been on mandatory supervision for only six months.

Both parties submitted e-mail correspondence from, and described phone conversations with, personnel at California's Interstate Compact office concerning the mandatory supervision eligibility issue. Each party claimed these e-mails and conversations supported its position on the eligibility question.

At a hearing on September 19, 2013, the court denied Wofford's motion for permission to apply for a transfer under the Compact. The court reasoned a defendant on mandatory supervision is for "all intents and purposes" serving a prison term even though the defendant is released in the community; a defendant who is an inmate does not qualify for a Compact transfer; and accordingly mandatory supervision releasees were not eligible for Compact transfers. The court also stated Wofford was doing well on mandatory supervision but she had not been on mandatory supervision long enough to determine whether her progress will be consistent, and there was a question as to whether Virginia would supervise her in the same manner as she was being supervised in San Diego.

In response to defense counsel's requests for clarification, the court stated its ruling was without prejudice to Wofford's right to request reconsideration if she had additional time on mandatory supervision with consistent positive results, and if the court's findings on the other matters were also addressed.

Wofford filed an appeal challenging the court's ineligibility ruling. Although the court's ruling was without prejudice to Wofford's right to file another transfer request, her ability to purse a transfer request would be impeded absent a legal determination on the Compact eligibility issue. Accordingly, to resolve this purely legal issue, we treated Wofford's appeal as a petition for writ of mandate. (See *Thornburg v. Superior Court* (2006) 138 Cal.App.4th 43, 48.) We note that Wofford is *not* challenging the court's *factual* finding that a transfer application was not appropriate at this juncture, and we express no view on this fact-based component of the court's order.

5

DISCUSSION

California is a member of the Interstate Compact through which member states coordinate the out-of-state transfer and supervision of offenders who are released into the community under the supervision of the authorities.  The Compact contains detailed provisions governing transfer requests by the offender, implementation of the transfers, and supervision of the transferred offender.

The parties do not dispute that the Compact applies to offenders released into the community on traditional parole or probation status.  However, they disagree whether it applies to the new class of released offenders who, under California's recent Realignment Act, are serving a portion of their prison term released into the community under the supervision of the probation department.

For reasons we shall explain, we conclude mandatory supervision releasees are eligible to apply for transfers under the Compact.

I. *The Interstate Compact*

The Interstate Compact is an "agreement between member states that seeks to promote public safety by systematically controlling the interstate movement of certain adult offenders."  (Interstate Commission for Adult Offender Supervision Rules (Mar. 1, 2014) (Compact Rules or Rules), Introduction.)[3]  California enacted legislation adopting

---

[3]    The Compact is  available at <http://www.interstatecompact.org> as of October 22, 2014.

the Compact in 2000.  (Pen. Code,[4] § 11180.)  The Compact is overseen by the Interstate Commission for Adult Offender Supervision (ICAOS or the Commission), which is a "quasi-governmental administrative body vested by the states with broad regulatory authority."  (Compact Rules, *supra*, Introduction.)  The Commission promulgates rules that "have the force and effect of statutory law" and that take precedence over any conflicting laws established in the compacting states.  (§ 11180, arts. V, XIV; Compact Rules, *supra*, Introduction.)  To assist with implementation and interpretation of the Compact, the Commission also issues advisory opinions (Advisory Opinions) and a judicial bench book (Bench Book).  (Compact Rules, *supra*, Introduction; ICAOS Bench Book for Judges and Court Personnel (2014 ed.).)[5]  Each member state has a commissioner with voting rights on the Commission, and a compact administrator responsible for the administration and management of the Compact in the state. (§ 11180, arts. III, IV; Compact Rules, *supra*, Rule 1.101.)[6]

The current Compact, entitled the Interstate Compact for Adult *Offender* Supervision, was preceded by a 1937 Compact entitled the Interstate Compact for the Supervision of *Parolees and Probationers*.  (See § 11180, Preamble.)  The change in terminology in the current Compact—which uses the broad term "offender"—was "intended to correct perceived problems with the [predecessor Compact], which

---

[4]     Subsequent unspecified statutory references are to the Penal Code.

[5]     The Bench Book is available at <http://www.interstatecompact.org> as of October 22, 2014.

[6]     Subsequent numeric references to Rules are to the Compact Rules.

7

encouraged states to claim that certain individuals were exempt from coverage of the agreement by use of the explicit language of 'probationers' and 'parolees,' terms that were given a narrow definition and application."  (Bench Book, *supra*, at pp. 51-52.)

Explaining its purpose, the Compact states:  "The compacting states to this Interstate Compact recognize that each state is responsible for *the supervision of adult offenders in the community* who are authorized pursuant to the Bylaws and Rules of this compact to travel across state lines both to and from each compacting state in a manner so as to track the location of offenders, transfer supervision authority in an orderly and efficient manner, and when necessary return offenders to the originating jurisdiction."  (§ 11180, art. I, Purpose, italics added.)  Further, the Compact specifies that its purpose is, among other things, "to provide for the effective tracking, supervision, and *rehabilitation of these offenders by the sending and receiving states*."  (*Ibid*., italics added.)

The Compact's general eligibility requirements are derived from the definitions of the terms "offender" and "supervision" set forth in the Compact Rules.  *Offender* is defined as "an adult *placed under, or made subject to, supervision* as the result of the commission of a criminal offense and *released to the community under the jurisdiction of courts, paroling authorities, corrections, or other criminal justice agencies*, and who is required to request transfer of supervision under the provisions of the Interstate Compact for Adult Offender Supervision."  (Rule 1.101, italics added.)  *Supervision* is defined as "*the oversight exercised by authorities* of a sending or receiving state over an offender for a period of time *determined by a court or releasing authority*, *during which time the*

8

*offender is required to report to or be monitored by supervising authorities, and to comply with regulations and conditions*, other than monetary conditions, imposed on the offender at the time of the offender's release to the community or during the period of supervision in the community." (*Ibid*., italics added.)

The Compact Rules contain several provisions specifying various types of offenders who are, or are not, eligible for transfer under the Compact. The Rules state offenders subject to *deferred sentences* are eligible. (Rule 2.106.) The Rules list the following types of offenders as ineligible: (1) a person "subject to supervision pursuant to a *pre-trial release program, bail, or similar program*"; and (2) a person "who is released from incarceration under *furlough, work-release, or other pre-parole* program." (Rules 2.106, 2.107, italics added.)

Under the Rules, the sending state (the state sending the offender) has the discretion to decide whether to request the transfer of an offender to another state. (Rules 2.101, 3.101; Bench Book, *supra*, at p. 54.) When a sending state makes a transfer request, acceptance of the transfer by the receiving state (the state receiving the offender) is mandatory if the offender (1) has more than 90 days or an indefinite period of remaining supervision; (2) has a valid plan of supervision; (3) is in substantial compliance with the terms of supervision; and (4) either (a) is a resident of the receiving state, or (b) has family in the receiving state able to assist with the supervision, and can obtain employment or has a means of support. (Rule 3.101.) If these criteria are not met, the receiving state's acceptance of the transfer is discretionary. (Rule 3.101-2.)

9

To initiate the transfer process, the offender must obtain the approval of the sending state's Interstate Compact office, and the sending state then sends the transfer request to the receiving state. (Rule 2.101; Bench Book, *supra*, at pp. 54-55.) The Compact Rules require that the sending state submit specified information to the receiving state, including a description of the offense, the conditions of supervision, the presentence-investigation report, any no-contact or sex offender registration orders, and the supervision history. (Rule 3.107.) The length of supervision is determined by the sending state, whereas the terms of supervision are determined by the receiving state. (Rules 4.102, 4.101.)[7] The sending state must inform the receiving state of any special conditions applicable to the offender; the receiving state must notify the sending state if it is unable to enforce a special condition imposed in the sending state; and the receiving state may impose its own special conditions. (Rule 4.103.)

Annually or more frequently upon request, the receiving state must send progress reports to the sending state, providing information about the offender's compliance with the supervision conditions, participation in treatment programs, any sanctions imposed, and the supervising officer's recommendation. (Rule 4.106.) The receiving state must notify the sending state if there are significant supervision violations, and the sending

---

7    Rule 4.102 states: "A receiving state shall supervise an offender transferred under the interstate compact for a length of time determined by the sending state."
     Rule 4.101 states: "A receiving state shall supervise an offender transferred under the interstate compact in a manner determined by the receiving state and consistent with the supervision of other similar offenders sentenced in the receiving state."

state has the authority to order the return of the offender to the sending state without use of extradition procedures. (Rules 3.109, 4.109, 5.101.)

## II. *California's Realignment Statutes*

Entirely distinct from the Compact, California's penal system was substantially revamped in 2011 with enactment of the Realignment Act, which shifted responsibility for the custodial housing and postrelease supervision of certain felons from the state to the local jails and probation departments. (*People v. Cruz, supra*, 207 Cal.App.4th at pp. 668, 671; § 1170, subd. (h).) In a statement of declarations and findings underlying the Realignment Act, the Legislature stated it was *committed to reducing recidivism*; California parolees have recidivism rates greater than the national average; and building more prisons was not sustainable and would not result in improved public safety. (§ 17.5, subd. (a)(1)-(3); *Cruz, supra*, at p. 669.) The Legislature stated that California must support "community-based corrections programs and evidence-based practices that will achieve improved public safety," and that realigning low-level felony offenders to "*locally run community-based corrections programs*, which are strengthened through community-based punishment, evidence-based practices, improved supervision strategies, and enhanced secured capacity, will improve public safety outcomes among adult felons and *facilitate their reintegration back into society*." (§ 17.5, subd. (a)(4), (5), italics added.)

The Legislature explained that " '[c]ommunity-based punishment' means correctional sanctions and programming encompassing a range of custodial and noncustodial responses to criminal or noncompliant offender activity" that "may be

11

provided by local public safety entities directly or through community-based public or private correctional service providers . . . ." (§ 17.5, subd. (a)(8).) The Legislature delineated a nonexclusive list of community-based punishments, including such options as "[s]hort-term flash incarceration" in jail for 10 days maximum; intensive community supervision; home detention with electronic or GPS monitoring; mandatory community service; restorative justice programs such as victim restitution and victim-offender reconciliation; work furlough and work release programs; day reporting; mandatory substance abuse treatment and random drug testing; and residential programs offering supervision, treatment and other interventions. (*Ibid.*) The Legislature further explained that " '[e]vidence-based practices' " refers to supervision practices "demonstrated by scientific research to *reduce recidivism* . . . ." (*Id.*, subd. (a)(9), italics added.)

To implement this shift from the state to local communities, the Realignment Act provides that eligible felons will serve their prison terms in local jails rather than state prison. (*People v. Cruz, supra*, 207 Cal.App.4th at p. 671; § 1170, subd. (h)(1), (2).) When imposing these local sentences, the trial court may select a straight commitment to jail for the applicable term, or it may select "a hybrid sentence in which it suspends execution" of a portion of the term and releases the felon into the community under the mandatory supervision of the county probation department. (*Cruz, supra*, at p. 671; §§ 1170, subd. (h)(5), 19.9.) Describing the split sentence option, section 1170, subdivision (h), provides that the court shall "*suspend execution*" of the portion of the term to be served under mandatory supervision in the community, and during the mandatory supervision period the defendant shall be supervised by the probation

12

department "in accordance with the *terms, conditions, and procedures generally applicable to persons placed on probation . . . .*" (§ 1170, subd. (h)(5)(A), (B), italics added.)[8]

### III. *Analysis*

When deciding whether offenders released into the community under mandatory supervision are eligible to apply for out-of-state transfers under the Interstate Compact, we apply well-established rules of statutory interpretation. We view the statutory enactments as a whole; consider the plain, commonsense meaning of the language used by the enactors; and seek to effectuate the legislative intent evinced by the enactments. (*People v. Fandinola* (2013) 221 Cal.App.4th 1415, 1421.)

---

[8] Section 1170, subdivision (h)(5) states: "(A) Unless the court finds that, in the interests of justice, it is not appropriate in a particular case, the court, when imposing a sentence . . . *shall suspend execution of a concluding portion of the term* for a period selected at the court's discretion. [¶] (B) The portion of a defendant's sentenced term that is suspended pursuant to this paragraph shall be known as *mandatory supervision*, and shall begin upon *release from custody*. During the period of mandatory supervision, the defendant *shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court*. The period of supervision shall be mandatory, and may not be earlier terminated except by court order. Any proceeding to revoke or modify mandatory supervision under this subparagraph shall be conducted pursuant to either subdivisions (a) and (b) of Section 1203.2 or Section 1203.3 [addressing revocation or modification of probation and other release terms]. During the period when the defendant is under such supervision, unless in actual custody related to the sentence imposed by the court, the defendant shall be entitled to only actual time credit against the term of imprisonment imposed by the court. Any time period which is suspended because a person has absconded shall not be credited toward the period of supervision." (Italics added.)

13

Neither the Compact Rules nor California's Penal Code (including the Realignment Act) contain any provisions expressly addressing whether mandatory supervision releasees are eligible to apply for transfers under the Compact.[9] However, the language used in the Compact Rules readily suggests an intent to incorporate these releasees into the Compact. Rule 1.101 broadly defines an offender as a person "*released to the community under the jurisdiction of . . . criminal justice agencies*" and broadly defines supervision as "*the oversight exercised by authorities . . . determined by a court or releasing authority*." (Italics added.) Persons serving a prison term released in the community under the probation department's supervision easily fall within these expansive definitions of offenders under supervision set forth in the Compact Rules.

Likewise, the eligibility of mandatory supervision releasees is consistent with the views expressed by the Commission in its judges' bench book, which states that offenders *need not be on "formal probation or parole status"* to qualify for transfers, and explicitly recognizes the eligibility of offenders on "*release from incarceration with community-based supervision . . . .*" (Bench Book, *supra*, at p. 8, italics added.) Indeed, as noted, when the 1937 predecessor compact was replaced with the current Compact, the broadly-defined term "offender" was affirmatively selected in lieu of the more narrow terms "probationer" and "parolee" to encourage a wider application of the Compact. (*Id*. at pp. 51-52.) As the Commission explained, the broad definition of offender allows it to

_____

9     In contrast to out-of-state transfers, the California Legislature has addressed in-state transfers between *counties*, stating that mandatory supervision releasees, along with probationers, may apply to transfer their supervision or probation to another county. (§ 1203.9.)

14

"regulate the full breadth of adult offenders," including those "subject to *deferred execution of sentence if some form of community supervision and/or reporting is a condition of the court's order*," and those subject to "*other 'non-standard' forms of disposition* as determined by the Commission *if some form of community supervision and/or reporting is a condition of the court's order*."  (*Ibid.*, italics added.)

Advisory opinions issued by the Commission also reflect an intent to encompass a broad array of offenders released under supervision in the community.  In these opinions, the Commission has repeatedly emphasized that "individual states' statutory schemes can vary remarkably across the nation" and an offender's eligibility should *not* be based on "the *label* used by" a particular state legislature, but rather should be based on "the *action actually taken by . . . the court*."  (Advisory Opn. 6-2005, p. 3, italics added; Advisory Opn. 4-2004, p. 3.)  For example, the Commission has explained that an offender released on a deferred sentence is eligible under the Compact because the "*offender is no longer in a pretrial, presumed innocent status,* but has [been] found to have committed the charged offense *notwithstanding the decision of the court to withhold punitive sentencing in favor of an alternative program of corrections such as deferment, probation in lieu of sentencing, suspended imposition of sentence or suspended execution of sentence*."  (Advisory Opn. 4-2004, pp. 2-3, italics added; see Advisory Opn. 6-2005, pp. 2-3 [state's deferred prosecution equates with deferred sentence because offender stipulates to guilt in the event he or she fails to comply with release conditions]; Advisory Opn. 1-2009 [even though rules of predecessor compact referred to prerelease transfer requests from a "paroling offender," the provisions governing prerelease transfer requests

15

applied equally to Massachusetts offenders sentenced to "split" jail or prison sentences who would be released to probation supervision].)

It is apparent that regardless of the particular sentencing structure utilized by a state, the essential factors that bring an offender within the parameters of the Compact are (1) an adjudication of guilt, and (2) release from custodial status into the community under supervision. Persons released into the community on mandatory supervision under California's Realignment Act fit these requirements.

To support its contrary position, the Attorney General points to the Compact Rule excluding from eligibility offenders who are "released from incarceration under furlough, work-release, or other pre-parole program." (Rule 2.107). Typically, these types of offenders remain in confinement when they are not working, or are required to report to designated work programs which effectively impose a type of confinement. (See § 1208, subd. (d)(1) ["Whenever the prisoner is not employed . . . and between the hours or periods of employment . . . , the prisoner shall be confined in the facility designated by the board of supervisors for work furlough confinement unless the work furlough administrator directs otherwise."]; § 4024.2, subd. (c) ["As a condition of participating in a work release program, a person shall give his or her promise to appear for work . . . by signing a notice to appear . . . and . . . an agreement that the sheriff may immediately retake the person into custody . . . if the person fails to appear . . . .]; *People v. Bojorquez* (2010) 183 Cal.App.4th 407, 422 [work release program has attributes of confinement].) Thus, these offenders are released under programs that can retain a *significant custodial arrangement*. The exclusion of offenders who are confined to work programs does not

16

suggest an intent to exclude offenders who are released under other programs, such as mandatory supervision, that focus on *supervision rather than confinement*. (See Bench Book, *supra*, at p. 58 [the Compact "has application in a broad range of cases and dispositions beyond traditional conviction followed by probation"; key consideration is whether "the end consequence of the court's action [was] community supervision"].)

Turning to California's Realignment Act, there are no provisions prohibiting application of the Compact to mandatory supervision releasees, and there is nothing in the Realignment Act suggesting that the Legislature intended to exclude mandatory supervision releasees from Compact eligibility. The community-based punishment concept described in the Realignment Act focuses on keeping the offender *in the local community under supervision*, but it does not mandate that the community affording this support and supervision must necessarily be a *California* community. Also, the discretionary availability of a transfer to another state could well serve the goals of the Realignment Act. As one court observed, "[i]t is apparent . . . that the overall purpose of the [Realignment] Act is to reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending." (*People v. Cruz, supra*, 207 Cal.App.4th at p. 679.) If an offender released on mandatory supervision shows that he or she has a better chance of *avoiding recidivism in another state*, it would advance the goals of the Realignment Act if the offender could seek transfer under the Compact.

Further, the fact that approval of a supervised offender's request for out-of-state transfer is *fully within the discretion* of the relevant California authorities ensures that the

17

goals of the Realignment Act will not be undermined by application of the Compact to mandatory supervision releasees. First, based on the mandatory supervision condition requiring court and probation officer consent to an out-of-state move, the superior court serves as a gatekeeper with discretion to decline permission to pursue a transfer request with the Compact office. Thus, Compact eligibility does not lessen the trial court's discretionary power to keep an offender within the state because without the court's approval there can be no transfer. Second, the Compact office can decline the transfer request even if the court and probation officer consented.[10] Thus, if there is a concern that an offender released on mandatory supervision might *not* receive the appropriate level or type of supervision in the other state, California has full authority to keep the offender within its borders. Also, if a transferred offender does not perform well in the receiving state, the Compact Rules allow the offender to be returned to California.

We are not persuaded by the Attorney General's argument that the Compact does not apply to mandatory supervision releasees because they are not parolees or probationers, but rather inmates who are serving their prison terms in the community. (See, e.g., *People v. Fandinola, supra*, 221 Cal.App.4th at p. 1422 [probation supervision fee may not be imposed on mandatory supervision releasee because the sentence is "akin

---

[10] We note that, apart from an offender's mandatory supervision conditions, the Commission also requires that the offender's supervising agent (i.e., probation officer) first decide if the transfer plan is viable, and if the decision is no, the application is not submitted to the Compact office. (See Compact Flow Chart, Overview of the Interstate Compact Process, available at <http://www.interstatecompact.org/About/NavigatingTheCompact.aspx.> as of October 22, 2014.

18

to a state prison commitment; it is not a grant of probation or a conditional sentence"].) As we indicated, the Commission has made clear that the fact that an offender is not a traditional parolee or probationer is not determinative of eligibility; rather, the key components of eligibility are (1) adjudicated guilt, and (2) release from custodial status into the community under supervision. Regardless of the label placed on the sentence being served by the mandatory supervision releasee, these eligibility components are satisfied. As to the intent of the California Legislature, the Realignment Act directs that the court *suspend execution* of the portion of the sentence to be served in the community. (§ 1170, subd. (h)(5)(A).) The Legislature's reference to a suspended sentence reflects its recognition that there is a qualitative difference between an inmate in actual prison custody and a felon released in the community under mandatory supervision. Although a mandatory supervision sentence may be treated as akin to an actual prison term for *some* purposes, for *purposes of Compact eligibility* it meets the core requirement of noncustodial release into the community under supervision.

Finally, we reject the Attorney General's contentions that Wofford has no standing to present, or has forfeited, her challenge to the court's lack-of-eligibility ruling. She has standing because she is aggrieved by the court's ruling that she was not eligible to request a transfer (see *In re L. Y. L.* (2002) 101 Cal.App.4th 942, 948), and there was no forfeiture because she raised the issue of eligibility before the trial court (see *In re S.C.* (2006) 138 Cal.App.4th 396, 406). The federal cases cited by the Attorney General to support its claim of no standing are inapposite because they merely hold an offender cannot bring a *federal* cause of action alleging a state's violation of the Compact. (*M.F.*

19

*v. State of New York Executive Dept. Div. of Parole* (2d Cir. 2011) 640 F.3d 491, 494-497 [challenge to conditions imposed by receiving state is matter that is traditionally relegated to state law]; *Doe v. Pennsylvania* (3d Cir. 2008) 513 F.3d 95, 103-105.)  Wofford is requesting a *legal* evaluation of Compact eligibility, which is a proper matter for *state or federal* court determination.  (See *M.F., supra*, 640 F.3d at pp. 493-494; *Commonwealth v. Blaxton* (Va. 2012) 722 S.E.2d 247, 248-249; *Hubble v. Bi-State Development Agency of Illinois-Missouri Metropolitan Dist.* (Ill. 2010) 938 N.E.2d 483, 489, fn. 3.)  Equally unavailing is the Attorney General's claim of forfeiture based on Wofford's failure to challenge the mandatory supervision condition requiring that she obtain consent from the court and probation officer to move out of state.  Wofford's acceptance of this condition did not mean she was waiving her right to request a transfer under the Compact; rather, she merely agreed she would obtain permission from the court and probation officer before moving, which thus required her to seek court approval before pursuing a transfer under the Compact.

Given the broad applicability of the Compact to offenders released on supervision, and the Realignment Act's goal of recidivism reduction that can be served by out-of-state transfer, we conclude an offender released into the community to serve a mandatory supervision sentence under the Realignment Act is eligible to apply for a transfer under the Compact.

In the event we reach this conclusion, the Attorney General agrees that Wofford is entitled to another hearing on whether she should be permitted to submit a transfer application under the Compact.  We emphasize that our holding is a narrow one, confined

20

to the legal issue of Compact eligibility for mandatory supervision releasees.  We express no opinion on the factual question of whether the trial court should issue a ruling in favor of allowing Wofford to submit a Compact transfer application.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to correct its September 19, 2013 order to the extent the court ruled mandatory supervision releasees are ineligible to apply for transfers under the Compact.


      HALLER, J.

WE CONCUR:


      HUFFMAN, Acting P. J.


      AARON, J.