Filed 8/11/16  P. v. Lopez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068892 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN34661) |
| ADOLFO LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael J. Popkins, Judge.  Affirmed.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Adolfo Lopez pleaded guilty to one count of the unlawful taking and driving of a vehicle (Veh. Code, § 10851, subd. (a)).  In connection with the plea, defendant also admitted he was previously convicted of felony vehicle theft (Pen. Code, § 666.5, subd. (a)).  In exchange for the plea, the other charge pending against defendant was dismissed along with the enhancement allegation.  Pursuant to the plea form, defendant agreed to "Stip 4 yrs."  The court sentenced defendant to four years in local custody.

On appeal, defendant does *not* seek to set aside the plea agreement.  Instead, he contends the court abused its discretion and thus erred in sentencing him to local custody and not state prison.  As we explain, we disagree and thus affirm the judgment of conviction.

## OVERVIEW[1]

On June 18, 2015, about 2.40 a.m., victim Michael Neblock was delivering newspapers in his 2009 Toyota pickup to a convenience store located in Escondido. Neblock parked his car, left his keys inside the pickup and went into the store.  As he was exiting the store, Neblock heard the driver's side door of his pickup shut.  Neblock next saw his pickup being driven out of the store parking lot.  After giving chase, Neblock saw the pickup turn onto a freeway on-ramp.

About seven minutes later, police officers located the pickup on the freeway.  The driver of the pickup was identified as defendant, who was arrested.

---

[1]     This summary is primarily taken from the San Diego County Probation Department Adult Services Reentry Court Report (report).

As noted, defendant pleaded guilty to the unlawful taking of a vehicle and the accompanying enhancement. During the plea hearing, the court noted the People in return agreed to "dismiss the balance of the charges against [defendant] and [he] would receive a stipulated sentence of four years *in state prison*." (Italics added.)

At his sentencing, the court noted the hearing had been continued to determine whether defendant should be sentenced to local custody or state prison. The court also noted that determination depended on whether defendant had a valid "strike" stemming from an April 2006 incident in which defendant pleaded guilty to felony assault (Pen. Code, § 245, subd. (a)(1)) and admitted the enhancement allegation of being in possession of a "dangerous weapon" (i.e., a baseball bat) (Pen. Code, § 12020, subd. (a)(1)). The court further noted that under the former law, if this prior conviction was for assault with force likely to produce great bodily injury, then it would not be a strike, but if it was for assault with a deadly weapon, it would be a strike.

In addition, the court noted the only information it had on this prior was defendant admitting to probation he used the bat to " 'defend[] himself.' " Because that admission had little "probative value" in determining whether the April 2006 prior was a strike, the court "err[ed] on the side that it's not."[2]

---

[2] The record shows the prosecution suggested that defendant could admit he used a baseball bat in connection with the April 2006 prior, which admission would suffice as proof to support a strike. Understandably, the defense declined to do so.

After observing defendant "has clearly displayed an unwillingness and inability to comply by the law while under the supervision of probation,"[3] the court sentenced defendant as follows:

"All right. Over the defendant's objection, I will impose a local sentence on this case. I do believe that under Vehicle Code section 10851[, subdivision (a)], unless I'm convinced that there is a strike prior in his history, which I am not convinced of, based on the evidence before me that this is an appropriate sentence that has to be local imprisonment."

DISCUSSION

Defendant contends he was deprived of the benefit of his plea bargain when the court sentenced him to serve his four-year sentence in local custody, as opposed to state prison. We disagree.

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.)' " (*People v. Shelton* (2006) 37 Cal.4th 759, 767 (*Shelton*).)

---

[3] In fact, the report noted that at age 27, the instant offense was defendant's "ninth felony conviction [and] third vehicle theft-related conviction"; that in "less than a decade, the defendant has been afforded probation grants on six occasions, and he [has] been sentenced to [s]tate [p]rison three times"; and that defendant was discharged from prison "merely five weeks prior to committing the instant offense."

Here, the plea form signed and initialed by defendant does *not* say defendant will serve his time in state prison but rather says, as noted, "Stip 4 years." Therefore, whether defendant was to serve his sentence in local custody or state prison was *not* a term of the plea agreement. That the court stated at the plea hearing defendant was agreeing to a four-year sentence in *state prison* does not, in our view, change the terms of the plea agreement. (See *Shelton*, *supra*, 37 Cal.4th at p. 767.) Rather, at most, it makes that agreement ambiguous on where defendant would serve his sentence.

However, once the court ruled defendant's April 2006 prior was not a strike, defendant was not entitled to serve his sentence in state prison. Vehicle Code section 10851, subdivision (a) expressly, and Penal Code section 666.5, subdivision (a) implicitly, require the sentencing court to restrict any term of imprisonment to *county jail*, pursuant to Penal Code section 1170, subdivision (h).

Vehicle Code section 10851, subdivision (a) provides: "Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense and, upon conviction thereof, shall be punished by imprisonment in a *county jail* for not more than one year or pursuant to *subdivision (h) of Section 1170 of the Penal Code* or by a fine of not more than five thousand dollars ($5,000), or by both the fine and imprisonment." (Italics added.)

5

Similarly, Penal Code section 666.5, subdivision (a) provides in part: "Every person who, having been previously convicted of a felony violation of Section 10851 of the Vehicle Code . . . shall be punished by imprisonment pursuant to *subdivision (h) of Section 1170* for two, three, or four years, or a fine of ten thousand dollars ($10,000), or both the fine and the imprisonment."

Finally, Penal Code section 1170, subdivision (h) provides in relevant part: "(1) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a *county jail* . . . . [¶] (2) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a *county jail* for the term described in the underlying offense." (Italics added.)

It is well recognized that in interpreting a statute, we seek to "ascertain the Legislature's intent so as to effectuate the purpose of the law. (*People v. Gardeley* (1996) 14 Cal.4th 605, 621.) In determining intent, we must look first to the words of the statute because they are the most reliable indicator of legislative intent. (*People v. Lawrence* (2000) 24 Cal.4th 219, 230.) If the statutory language is clear and unambiguous, the plain meaning of the statute governs. (*Id.* at pp. 230–231.)" (*People v. Lopez* (2003) 31 Cal.4th 1051, 1056 (*Lopez*).)

Applying this rule of statutory interpretation here, we conclude the trial court properly sentenced defendant to four years in local custody, as required by the "plain meaning" of (i) Vehicle Code section 10851, subdivision (a) and (ii) Penal Code section

6

1170, subdivision (h)(1) & (2), and as a result of the reference to the latter statute in Penal Code section 666.5, subdivision (a). (See *Lopez, supra*, 31 Cal.4th at p. 1056.)

In addition, we conclude sentencing defendant to state prison, as opposed to local custody, would frustrate the purposes of the Realignment Act. "California's penal system was substantially revamped in 2011 with enactment of the Realignment Act, which shifted responsibility for the custodial housing and postrelease supervision of certain felons from the state to the local jails and probation departments. ([Citation; Pen. Code,] § 1170, subd. (h).) In a statement of declarations and findings underlying the Realignment Act, the Legislature stated it was committed to reducing recidivism; California parolees have recidivism rates greater than the national average; and building more prisons was not sustainable and would not result in improved public safety. [Citations.] The Legislature stated that California must support 'community-based corrections programs and evidence-based practices that will achieve improved public safety,' and that realigning low-level felony offenders to '*locally run community-based corrections programs,* which are strengthened through community-based punishment, evidence-based practices, improved supervision strategies, and enhanced secured capacity, will improve public safety outcomes among adult felons and facilitate their reintegration back into society.' [Citation.] [¶] . . . [¶]

"To implement this shift from the state to local communities, the Realignment Act provides that eligible felons will serve their prison terms in *local jails rather than state prison*. ([Citation; Pen. Code,] § 1170, subd. (h)(1), (2).) When imposing these local

7

sentences, the trial court may select a straight commitment to jail for the applicable term, or it may select 'a hybrid sentence in which it suspends execution' of a portion of the term and releases the felon into the community under the mandatory supervision of the county probation department.' " (*Wofford v. Superior Court* (2014) 230 Cal.App.4th 1023, 1032-1033, some italics in original omitted; italics added.)

For this separate reason, we reject defendant's contention the court erred when it sentenced him to four years in local custody, as opposed to state prison.

DISPOSITION

The judgment of conviction is affirmed.


BENKE, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.


8